UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KATHRINE M. BAUZA,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

DECISION & ORDER

18-CV-1434-MJP

---

## INTRODUCTION

**Pedersen, M.J.** Kathrine M. Bauza ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). Pursuant to 28 U.S.C. § 636(c), the parties have consented to the disposition of this case by a United States magistrate judge. (ECF No. 23.)

## BACKGROUND

On February 13, 2014, Plaintiff protectively filed a Title II application for a period of disability and DIB, alleging disability beginning June 7, 2013. (R.[1] 16, 187.) Plaintiff also filed a Title XVI application for supplemental security income on February 13, 2014, alleging disability beginning on May 1, 2009. (R. 19, 189.) Plaintiff's claims were initially denied on July 17, 2014. (R. 16, 116–21.) Plaintiff

---

[1] Referring to the full and accurate transcript of the entire record of proceedings relating to this case. (Record, Aug. 19, 2019, ECF No. 9 and Supplemental Record, Dec. 20, 2019, ECF No. 19).

timely requested a hearing on August 27, 2014. (R. 16, 125.) Plaintiff appeared and testified at a hearing held on June 26, 2017, before an Administrative Law Judge ("A.L.J.") and was represented by an attorney (R. 36.) A vocational expert also testified at the hearing. (*Id.*) On October 2, 2017, the A.L.J. issued an unfavorable decision. (R. 13–30.) Plaintiff timely filed a request for review by the Appeals Council on December 4, 2017. (R. 180–86.) The Appeals Council denied the request for review on October 15, 2018, thereby making the A.L.J.'s decision the final decision of the Commissioner. (R. 1–6.) Plaintiff timely filed this civil action in District Court, seeking judicial review of the A.L.J.'s decision. (Compl., Dec. 7, 2018, ECF No. 1.)

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Section 405(g) provides that the district court "shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). It directs that when considering a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 149 (1997).

To determine whether substantial evidence supports the Commissioner's findings, the Court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (*per curiam*)). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner's conclusions are based upon an erroneous legal standard. *Green-Younger v. Barnhart*, 335 F.3d 99, 105–6 (2d Cir. 2003); *see also Mongeur*, 722 F.2d at 1038 (finding a reviewing court does not try a benefits case *de novo*.)

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A.) In assessing whether a claimant is disabled, the A.L.J. must employ a fivestep sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*.) The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations;

(4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform his past work; and

(5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).)

## ANALYSIS

### *The A.L.J.'s Decision*

In his decision, the A.L.J. followed the required five-step analysis for evaluating disability claims. (R. 17.) The A.L.J. found that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2014 (R. 19.) Under step one of the process, the A.L.J. found that Plaintiff had not engaged in substantial gainful activity since May 1, 2009, the onset date. (R. 19.) At step two, the A.L.J. concluded that Plaintiff had the following severe impairments: bipolar disorder, major depressive disorder, and unspecified personality disorder with borderline traits. (R. 19.) At step three, the A.L.J. determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (R. 20.) At step four, the A.L.J concluded that Plaintiff has the

4

Residual Functional Capacity ("RFC") to perform a full range of work at all exertional levels, but with various non-exertional limitations as follows:

> [Plaintiff] could frequently understand, remember and carry out complex instructions. She can handle low stress defined as including no supervisory duties and she is subject to only occasional independent decision-making, with no strict production quotas. The claimant further is limited to occasional changes in work routine and processes, occasional interaction with supervisors and no or only incidental interaction with coworkers and the public. She could perform no team or tandem working or co-working.

(R. 21.) The A.L.J. also found that Plaintiff was unable to perform past relevant work. (R. 28.) The A.L.J. proceeded to step five and found that jobs existed in the national and regional economy that Plaintiff could perform. (R. 29.) Therefore, the A.L.J. found that Plaintiff was not disabled. (R. 29.)

## *Plaintiff's Assessment of Errors*

Plaintiff contends that the A.L.J. erred in three respects. First, Plaintiff claims that the A.L.J. failed to properly weigh the opinion of treating clinician, Ann M. McLaughlin, Licensed Clinical Social Worker ("LCSW"). (Pl.'s Mem. of Law at 1, Jan. 21, 2020, ECF No. 20-1.) Second, Plaintiff asserts that the A.L.J. improperly excluded evidence under the five-day rule and that the A.L.J. should have included the evidence under the A.L.J.'s affirmative duty to develop the record. (*Id.* at 1 & 20.) Third, Plaintiff claims that the A.L.J. improperly relied on the July 22, 2017, opinion of one-time consultative examiner Susan Santarpia, Ph.D. to support his residual functional capacity assessment. (*Id.* at 1.)

***The A.L.J. properly weighed the April 7, 2015 opinion of Ann M. McLaughlin, LCSW.***

Plaintiff contends that the A.L.J. erred in assigning little weight to McLaughlin's April 7, 2015, employability assessment of Plaintiff. (*Id.* at 16.) In the opinion, McLaughlin found that Plaintiff was very limited in her ability to understand and remember information, carry out instructions, interact appropriately with others, maintain socially appropriate behavior, and maintain consistent pace. (R. 524.) Additionally, McLaughlin's assessment found that Plaintiff was moderately limited in her ability to maintain concentration, make simple decisions, and maintain appropriate hygiene and grooming. (*Id.*) The A.L.J. assigned little weight to this opinion due to his finding that it was inconsistent with Plaintiff's reported activity level at the time, specifically because Plaintiff was preparing for and traveled to Disney World with her family around the time of McLaughlin's assessment. (R. 26.)

This opinion also contrasted with an employability assessment conducted by McLaughlin on April 29, 2014, in which she found Plaintiff to be only moderately limited in her ability to carry out instructions, maintain attention and concentration, interact with others, maintain socially appropriate behavior, and function at a consistent pace. (R. 392.) Additionally, in the April 29, 2014, assessment McLaughlin found that Plaintiff had no limitations in her ability to understand and remember instructions, make simple decisions, and maintain hygiene and grooming. (*Id.*) The A.L.J. assigned significant weight to this opinion considering McLaughlin's familiarity with Plaintiff and the assessment's consistency with the overall record. (R. 25.)

6

The A.L.J. did not err in assigning McLaughlin's April 2015 assessment little weight. A licensed clinical social worker is not considered to be an acceptable medical source and, therefore, McLaughlin's opinion is not given controlling weight. *Martino v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 118, 128 (W.D.N.Y. 2018) ( licensed clinical social workers are not an "acceptable medical source"; accordingly, their opinions are not entitled to controlling weight.); *Conlin v. Colvin,* 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015) (citing *Piatt v. Colvin,* 80 F. Supp. 3d 480, 493 (W.D.N.Y. 2015)). However, an A.L.J. "should consider information from 'other sources,' such as social workers, which 'may also help … to understand how [the claimant's] impairment affects [her] ability to work.'" *Krach v. Colvin,* No. 13-CV-1089 (GTS/CFH), 2014 WL 5290368, at *14 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)) (alterations in original). The Commissioner is "free to decide that the opinions of 'other sources' … are entitled to no weight or little weight," but "those decisions should be explained." *Piatt,* 80 F. Supp. 3d at 493 (citation omitted). "The amount of weight to give such opinions is based in part on the examining and treatment relationship, length and frequency of the examinations, the extent of relevant evidence given to support the opinion, and consistency with the record as a whole." *Williams v. Colvin,* No. 15-CV-6119-FPG, 2016 WL 1466562 at *4, (W.D.N.Y. Apr. 14, 2016). An A.L.J. is not free to disregard a medical opinion solely on the basis that the opinion is from a nonmedical source. *Kelly v. Astrue,* No. 09-CV-1359, 2011 WL 817507 at *5–6, (N.D.N.Y. Jan. 18, 2011) (*reported and recommendation adopted,* 2011 WL 807398 (N.D.N.Y. Mar. 2, 2011)) (A.L.J. was not free to simply disregard a licensed clinical

social worker's assessment on the basis that he was not an acceptable medical source alone).

Plaintiff argues that the A.L.J. incorrectly assigned little weight to McLaughlin's April 2015 opinion based upon a "mischaracterization of the record." (Pl.'s Mem. of Law at 18, Jan. 21, 2020, ECF No. 20-1.) Plaintiff disagrees with the A.L.J.'s reasoning for assigning less weight to the April 2015 assessment, which was based upon the A.L.J.'s finding that the assessment was inconsistent with evidence in the record, and specifically that Plaintiff traveled to Disney World in early May 2015. (*Id.*) Plaintiff asserts that this was a mischaracterization of the record because evidence in the record indicates that Plaintiff had an extremely difficult time with the trip and was unable to deal with the stress involved with it. *Id.* Plaintiff argues that treatment notes from around the time of the trip demonstrate Plaintiff's difficulty in dealing with the trip. (Pl.'s Mem. of Law at 18.) However, there is a significant amount of evidence in the record that indicates that the A.L.J. was justified in his reasoning.

On April 30, 2015, Vivian Gerard, N.P., ("Gerard"), of the Chautauqua County Department of Mental Hygiene ("Chautauqua County Mental Health") noted that Plaintiff stated that "[e]verything's falling apart" in regard to her impending departure for Disney World. (R. 408.) However, the same treatment note indicates that the cause of Plaintiff's stress resulted primarily from the fact that Plaintiff's mother, aunt, and cousin were also going on the trip and Plaintiff did not get along with them. (*Id.*) In other words, the records demonstrate that the stress Plaintiff was

8

allegedly experiencing was due to interpersonal relationship issues and not the trip itself. In addition, just one month prior, on March 20, 2019, Plaintiff reported that she was "looking forward" to the trip. (R. 412.)

Furthermore, although Gerard did increase Plaintiff's prescription of gabapentin from 300 milligrams three times daily to 400 milligrams three times daily, Gerard indicated that Plaintiff was to only take the increased dosage as needed and noted that Plaintiff usually only took it as needed. (R. 409.)[2] Moreover, at Plaintiff's appointment with Gerard after the trip on June 29, 2015, Plaintiff reported that she had only been taking one gabapentin a day at bedtime and Gerard then actually lowered Plaintiff's prescription to only one gabapentin per day as needed. (R. 405–06.)

Additionally, Plaintiff points to her testimony at the hearing as evidence that she was unable to handle the mental stress of the trip. (Pl.'s Mem. of Law at 19.) While Plaintiff did testify that the trip was a "disaster" and she spent a lot of her time crying in her hotel room or fighting with her mother, she also testified that she flew on a plane there and back, stayed at the resort for four days and three nights, and went into multiple parks. (R. 82–83.) This level of activity on the trip to Disney World appears to drastically contradict the severe limitations indicated by McLaughlin in her April 2015 assessment.

Moreover, there are other aspects of McLaughlin's April 2015 assessment that are inconsistent with evidence on the record. For example, McLaughlin's finding that

---

[2] This medical record was electronically signed by McLaughlin. (R. 410.)

Plaintiff was moderately limited in her ability to maintain appropriate hygiene and grooming is inconsistent. (R. 524.) Indeed, none of Plaintiff's treatment notes in the record from Chautauqua County Mental Health, including around the time in which McLaughlin conducted her assessment, indicated that Plaintiff was at all limited in her ability to maintain appropriate grooming and hygiene. (R. 402–434.) In fact, all the bi-monthly visits, from February 14, 2014 to June 29, 2015, indicated that Plaintiff was either "neat and clean" or had fair hygiene. (R. 405–34.) This supports the A.L.J.'s conclusion that McLaughlin's April 2015 assessment was inconsistent with other evidence in the record.

Furthermore, McLaughlin's April 2015 assessment was also inconsistent with acceptable medical opinions in the record, specifically the opinions of J. Straussner, Ph.D., Janine Ippolito, Ph.D., and Susan Santarpia, Ph.D., In Dr. Straussner's Disability Determination Explantion conducted on July 17, 2014, he found that Plaintiff only had moderate limitations in maintaining social functioning and maintaining concentration, persistence or pace, and only mild limitations in daily living activities. (R. 108.) Additionally, in an examination conducted on July 8, 2014, consultative examiner Dr. Ippolito found that Plaintiff could understand and follow simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a schedule, learn new tasks, perform complex tasks and make appropriate decisions without limitations. (R. 320.) Furthermore, Dr. Ippolito found that Plaintiff only had moderate to marked limitations in relating adequately with others and appropriately dealing with stress. (R. 320.)

Additionally, Dr. Santarpia conducted a psychiatric evaluation on July 22, 2017, during which she found that Plaintiff was able to understand, remember, and apply simple and complex directions and instructions, make work-related decisions, sustain concentration, perform tasks at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, be aware of normal hazards and take appropriate precautions within normal limits. (R. 528). Furthermore, Dr. Santarpia found that Plaintiff only had mild to moderate impairment in her ability to interact with others including supervisors, co-workers and the public, regulate emotions, control behavior, and maintain her well-being. (R. 528.) The forgoing demonstrates that the extreme limitations found in McLaughlin's April 2015 opinion are not consistent with the opinions of the acceptable medical sources who examined Plaintiff.

Finally, contrary to Plaintiff's assertions otherwise, the A.L.J. did consider the length of treatment and familiarity that McLaughlin had with Plaintiff when determining how much weight to assign her assessments. (Pl.'s Mem. of Law at 19.) When considering the April 29, 2014, employability assessment completed by McLaughlin, the A.L.J. decided to assign the assessment significant weight because McLaughlin was a "treating source" who was familiar with Plaintiff. (R. 25.) Therefore, it cannot be said that the A.L.J. never considered McLaughlin's relationship with Plaintiff when assessing what weight to give her opinions.

In conclusion, McLaughlin's April 2015 employability assessment is inconsistent with evidence in the record. Therefore, the A.L.J. did not err in assigning this opinion little weight.

### *The A.L.J. Properly Excluded Evidence Under the Five-Day Rule and Satisfied His Duty to Develop the Record.*

The A.L.J. did not err in excluding evidence that Plaintiff attempted to submit at the hearing due to the fact that Plaintiff did not comply with the "five-day rule." At the hearing held on June 26, 2017, Plaintiff's counsel notified the A.L.J. of additional medical evidence not included in the record and attempted to submit such evidence, out of compliance with the five-day rule. (R. 38–41.) This evidence included medical records from Chautauqua County Mental Health, where Plaintiff received treatment for the mental health conditions that are identified as her main disabling impairments. (R. 19, 43.) Under the Social Security Administration's (SSA) regulations 20 C.F.R. § 404.935(a) and § 416.1435(a), a plaintiff or counsel must submit written evidence or inform the SSA about such evidence at least five business days prior to a scheduled hearing unless an exception applies. 20 C.F.R. §§ 404.935(a), 416.1435(a). The exceptions to this requirement include:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier;

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to: (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person; (ii) There was a death or serious illness in your immediate family;

12

(iii) Important records were destroyed or damaged by fire or other accidental cause; or (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.

20 C.F.R. §§ 404.935(b), 416.1435(b). In this case, at the June 26, 2017, hearing, the A.L.J. asked Plaintiff's counsel which exception applied to justify Plaintiff's belated attempt to submit evidence. (R. 39–41.) Plaintiff's counsel stated that the cause for the late submission was "office error" as the medical records at issue were misfiled by a temporary assistant and were therefore not submitted with the rest of the medical records, despite the fact that Plaintiff's counsel received them well in advance of the hearing. (R. 39–40.) Additionally, Plaintiff never informed the A.L.J. of these records until the date of the hearing. (R. 39.)

Plaintiff asserts that such office error qualified as an "unusual, unexpected, or unavoidable circumstance." (Pl.'s Mem. of Law at 21.) This proffered excuse of "office error" clearly does not fit into one of the enumerated examples of unusual, unexpected, or unavoidable circumstances, those being serious illness, death or serious illness of a family member, accidental destruction of the evidence, or having not received the evidence until after the deadline. 20 C.F.R. §§ 404.935(b)(3), 416.1435(b)(3). Furthermore, "a mistake by a representative is not an unusual, unexpected, or unavoidable circumstance as contemplated by the regulation." *Shari Lee Z. v. Saul*, No. 5:19-CV-0268 (GTS), 2019 WL 6840134, at \*6 (N.D.N.Y. Dec. 16, 2019). Here Plaintiff's counsel could have simply reviewed the record to determine that some of the records were missing. *Id.* Therefore, Plaintiff's excuse of "office error"

13

would not qualify as an exception to the five-day rule and the A.L.J.'s refusal to consider the records was not erroneous.

Additionally, the A.L.J. did not err in rejecting the belatedly submitted evidence despite the A.L.J.'s duty to develop the record. Given the non-adversarial nature of disability benefits proceedings, an A.L.J. has an affirmative obligation to develop the administrative record. *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). However, pursuant to 20 C.F.R. § 416.1435(a) an A.L.J. can decline to obtain or consider evidence that was not submitted in compliance with the five-day rule unless an exception to the rule applies. As discussed above, none of the enumerated exceptions to the rule applies.

Further, even if the record might be incomplete without the late submitted records, remand is not required despite the A.L.J.'s general duty to develop the record. The fact that the record might be incomplete without the late-submitted records from Chautauqua County Mental Health does not require remand because, although there is a general duty on the A.L.J. to ensure a complete record before rendering a decision, the Social Security Administration specifically balanced that duty with the goal of the five-day rule, providing that "[t]o say that the ALJ was required to admit and consider this evidence despite the fact that it was not submitted in compliance with the five-day rule would make that rule an empty vessel that need not be complied with." *Shari Lee Z.*, 2019 WL 6840134, at *6 *(*quoting *Arthur L. v. Berryhill*, 18-CV-0304, 2019 WL 4395421, at *3–4 (N.D.N.Y. June 6, 2019) (*report*

14

*and recommendation adopted*, 2019 WL 3213229 (N.D.N.Y. July 17, 2019)) (rejecting the same argument).

Finally, the evidence in the record (excluding the relevant Chautauqua County Mental Health records) provides sufficient evidence from which the A.L.J. could assess Plaintiff's mental functioning. This evidence includes treatment notes from Chautauqua County Mental Health from February 14, 2014, through August 25, 2015; employability assessments from McLaughlin; a July 15, 2014, assessment from Dr. Straussner, a state-agency psychologist; a July 2014 assessment from consultative examining psychologist Dr. Ippolito; and a July 22, 2017, assessment from consultative examining psychologist Dr. Santarpia. (R. 25–27, 399.) Therefore, the record is not so insufficient that the A.L.J. could not render a decision even without considering the missing medical records. *Shari Lee Z.*, 2019 WL 6840134, at *6. Due to the lack of a sufficient excuse for failing to timely submit the missing records, the A.L.J. was within his discretion to refuse to consider the late evidence.

### *The Weight Assigned by the A.L.J. to the Opinion of Susan Santarpia, PH.D. was Proper.*

The A.L.J. was justified in assigning significant weight to the July 22, 2017, opinion of consultative examiner Susan Santarpia, Ph.D. Plaintiff contends that the A.L.J. erred in assigning greater weight to the opinion of Dr. Santarpia, a consultative examiner, than to McLaughlin's April 2015 assessment because McLaughlin was a treating source and Dr. Santarpia was not. (Pl.'s Mem. of Law at 24.) As discussed above, the A.L.J. gave little weight to McLaughlin's April 2015 assessment due to its inconsistency with the record. The A.L.J. explained that Dr.

15

Santarpia's July 22, 2017, opinion "warrants significant weight since she is familiar with Social Security's rules and regulations regarding mental impairments and disability, but probably warrants slightly lesser weight than the assessments of Dr. Ippolito and Dr. Straussner." (R. 27.)

Generally, an A.L.J. should not rely heavily on one-time consultative examiners, especially in the context of mental illness, as a single look at an individual's condition is not indicative of his or her overall mental health. *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). However, "[a]n ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015); *Rosier v. Colvin,* No. 586 Fed. App'x 756, 758 (2d Cir. Oct. 9, 2014) (A.L.J. properly relied on evaluations by a consultative examiner to reject treating physician's opinion where other substantial evidence in the record was inconsistent with treating physician's opinion); *Leisten v. Colvin,* No. 12-CV-6698-FPG, 2014 WL 4275710, at *13–14 (W.D.N.Y. Aug. 28, 2014) ( finding it was not error for the A.L.J. to assign little weight to a treating doctor's opinion regarding Plaintiff's mental health when it was inconsistent or unsupported by the record and instead assigning substantial weight to the opinions of the consultative examiners whose opinions were supported by the record).

As discussed above, the A.L.J. did not err in assigning the April 2015 opinion of McLaughlin little weight on the grounds that it was inconsistent with the record.

Therefore, the A.L.J. may have been justified in giving greater weight to Dr. Santarpia's opinion even if McLaughlin was a treating physician. *See Estrella,* 925 F.3d at 98. Further, the A.L.J. did not err because McLaughlin, as a licensed clinical social worker, is not considered to be an acceptable medical source. Therefore, the A.L.J. did not err in assigning greater weight to Dr. Santarpia's opinion than that assigned to McLaughlin's April 30, 2015 assessment.

Finally, Plaintiff argues that Dr. Santarpia's finding that Plaintiff has mild to moderate impairment in her ability to interact with others is contradicted by Plaintiff's work history. (Pl.'s Mem. of Lawat 10.) Specifically, Plaintiff points to an incident where she was removed from her previous job in June 2013 after she waved a fake pistol at a co-worker's girlfriend. (R. 54–55.) However, this singular incident is not enough to determine that the whole of Dr. Santarpia's opinion is inconsistent, especially considering that incident happened over four years prior to Dr. Santarpia's examination and there is ample evidence in the record since that time that is consistent with Dr. Santarpia's opinion.

## CONCLUSION

After a careful review of the entire record, the Court finds that the Commissioner's denial of DIB and SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the A.L.J.'s decision is affirmed. For the reasons stated above, the Court grants the Commissioner's cross-motion for judgment on the pleadings (ECF No. 24) and denies Plaintiff's motion for judgment

17

on the pleadings (ECF No. 20). The Court directs the Clerk to enter judgment in favor of the Commissioner and close this case.

**IT IS SO ORDERED.**

DATED:     August 4, 2020
           Rochester, New York

*[signature: Mark Pedersen]*

MARK W. PEDERSEN
United States Magistrate Judge